Neil **WELLIVER** and Arlene **Gostin, Plaintiffs,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**No. 88 Civ. 4318 (KTD).**

United States District Court, S.D. New York.

Jan. 17, 1990.

Olwine, Connelly, Chase, O'Donnel & Weyher, New York City, for plaintiffs; Thomas M. Mueller, of counsel.

Graham & James, New York City, for defendant; Maureen Green, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Neil Welliver and Arlene Gostin bring this diversity action against defendant Federal Express Corporation ("Federal Express") for failure to deliver and loss of a package containing two original watercolor paintings. Federal Express moves pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing certain causes of action and adjudging that the liability of Federal Express for all causes of action asserted by plaintiffs is limited to $500. Gostin cross-moves pursuant to Fed.R.Civ.P. 56 for summary judgment on the first cause of action alleging breach of contract of carriage.[1]

The uncontradicted facts are as follows. In 1987, Welliver created two original watercolor paintings for publication in a limited edition luxury book, published by the Limited Editions Club. Gostin, a professor at the University of the Arts in Philadelphia and a professional printmaker, has been Welliver's printer since 1980. While Gostin was producing plates from the two paintings, she was authorized by Welliver to ship the paintings from Philadelphia to the Limited Editions Club in New York on his behalf.

On April 28, 1987, Gostin contacted Federal Express to arrange for shipment of the paintings. She also requested that the courier provide all necessary documentation and packaging materials. Gostin then prepared the watercolors for shipment by wrapping them in paper and masonite packaging material.

When the courier arrived, he informed Gostin that he was in a great hurry and did not have time to wait for her to fill out the necessary documents or to repackage the shipment into Federal Express' packaging materials. She agreed to have him fill out the airbill, number 1672350190. She gave him the necessary information on a piece of paper, which indicated the package was to be sent to Ben Schiff at the Limited Editions Club in New York. The courier assured her that he would take care of the rest, including completion of the necessary documentation. When she requested a receipt, the courier went out to his truck with the package and returned with a blank shipper's copy of the airbill on which he wrote the date and his employee number.

The face of the airbill expressly limits potential liability of Federal Express to $100 for any loss or damage to cargo. The reverse side of the airbill, as well as the Service Guide that the airbill incorporates by reference, provides that the shipper can declare a higher value than $100 for the cargo, with the freight rate charge increased accordingly. It also provides that a shipper of items of "extraordinary" value, such as artwork, may declare up to $500.

The package containing the paintings was never received by Limited Editions and Federal Express admits that it was lost in transit. Memorandum of Law in Support of Plaintiff Arlene Gostin's Cross–Motion for Summary Judgment and in Plaintiff's Joint Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Memo. in Support of Cross–Motion"), Exh. A. To date, it has not been located. Plaintiffs seek to recover the full value of Welliver's two original works of art. Four causes of action are alleged in the complaint: (1) breach of the contract of carriage; (2) negligence based on the loss of the package; (3) negligence based on the courier's alleged promise to fill out the airbill and his failure to do so; and (4) fraud based on the allegation that the courier knew his promise to fill out the airbill was false when he made it.

## DISCUSSION

■ Federal Express is an all-cargo air carrier certified by the Civil Aeronautics Board and the Federal Aviation Adminis-

---

1. Gostin moves here on behalf of herself as well as an agent of Welliver. Plaintiffs' counsel asserts that if the cross-motion is granted, then Welliver's claim against Federal Express would be satisfied as well. Memorandum of Law in Support of Plaintiff Arlene Gostin's Cross–Motion for Summary Judgment and in Plaintiffs Joint Opposition to Defendant's Motion for Summary Judgment at 2.

tration to provide interstate cargo transportation services to the public. The liability of interstate common carriers for the loss, damage, or delay of goods in transit in general is controlled by federal law. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233–34 (2d Cir.1978). Specifically, the declared value limitation of liability has survived deregulation of the airline industry as part of the federal common law of air carrier liability. *See, e.g., First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1120–22 (3d Cir.1984).

■ The declared value limitation in a contract of carriage applies whether the action sounds in tort or contract. *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir.1984). Indeed, under federal common law the declared value limitation of liability provision in Federal Express' airbills has been held to be enforceable. *See, e.g., United States Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1225 (S.D.N.Y.1989) (collecting cases).

Although it is not contested that Gostin did not declare or pay for a higher value for the package, Gostin asserts that the declared value limitation in the airbill is unenforceable against her because she was not afforded "reasonable notice" of the provision. Federal Express argues that Gostin had such notice because she requested that the package be shipped pursuant to an airbill and received a copy of it, and she admits having previously shipped packages with Federal Express using airbills with language identical to the limitation of the liability provision at issue here. Simms Affid. Exhs. F, E, I.

■ While it is not necessary that Gostin actually read the terms on the airbill to be bound by the liability limitation, that provision is enforceable only if two requirements are met. The limitation of liability must have been the result of a "a (1) 'fair, open, just and reasonable agreement' between carrier and shipper, entered into by the shipper 'for the purposes of obtaining the lower of two or more rates of charges proportioned to the amount of risk' ... and

(2) the shipper was given 'the option of higher recovery upon paying a higher rate.'" *Shippers Nat'l Freight Claim Council, Inc. v. ICC*, 712 F.2d 740, 746 (2d Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984) (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 509–10, 33 S.Ct. 148, 153–54, 57 L.Ed. 314 (1913) and *Boston & Main Railroad v. Piper*, 246 U.S. 439, 444, 38 S.Ct. 354, 355, 62 L.Ed. 820 (1918)).

■ In determining whether these requirements for enforceability have been met, courts have considered such factors as (1) whether the carrier has given adequate notice of the limitation of its liability to the shipper, (2) the economic stature and commercial sophistication of the parties, and (3) the availability of "spot" insurance to cover a shipper's exposure. *United States Gold*, 719 F.Supp. at 1225 (citations omitted). The reasonableness of notice is a question of law to be determined by the court. *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir.1987).

■ That Gostin was afforded reasonable notice is not supported by the record before me. Gostin's version of the circumstances surrounding the pick-up of the package are not contradicted by Federal Express. Indeed, Federal Express' own telephone logs concerning the search for the missing package state that the courier verified Gostin's account of the incident. *See* Federal Express Customer Exception Request, 5/14/87, Plaintiffs' Memo. in Support of Cross–Motion, Exh. B. The courier was in a great hurry and never gave Gostin an opportunity to either fill out or review the airbill containing the limitation of liability provision prior to her turning over the package. Thus, it appears that she was not even given a copy of the airbill until after the courier had taken possession of the package, and therefore had no opportunity to read it until after the courier had departed with the package. Accordingly, Gostin was afforded neither reasonable notice of the limitation of liability provision nor a fair opportunity to declare a higher value for the shipment.

The cases relied on by Federal Express with regard to "reasonable notice" are unpersuasive because all involve either experienced, sophisticated shippers familiar with liability limitation provisions or shippers who actually declared a value for their shipments. *See, e.g., United States Gold,* 719 F.Supp. at 1225 (undisputed that both parties were sophisticated commercial entities and that shipper, from its extensive previous use of Federal Express, had more than adequate notice of the liability limitation, and even secured protection for its shipment from an outside insurer). Gostin does not have an account with Federal Express, having made no more than three shipments with Federal Express prior to April 1987. In addition, none of those shipments involved items that were irreplaceable or of significant value. Gostin Affid. ¶¶ 8, 19. Gostin thus had no reason to use the declared value option previously or to be familiar with the special limits for items of "extraordinary value." Moreover, Gostin avers that she had no knowledge of Federal Express' limitation of liability clause, and that if she had known of it, she would have made other arrangements for shipment of Welliver's paintings. Gostin Affid. ¶¶ 21–22. In these circumstances, the fact that Gostin eventually received a copy of the airbill does not constitute "reasonable notice."

On the record before me, the liability limitation was not the result of a "fair, open, just and reasonable agreement" and Gostin was not given a fair opportunity to choose among different rates to obtain different coverage. The circumstances surrounding the pick-up of the package and the delivery of the airbill to Gostin outweigh the mere existence of the limitation provision. I find that the limitation of liability provision is therefore unenforceable and Federal Express is liable for the full value of the two lost paintings.

The only submission to the court with regard to the value of Welliver's two watercolors is the affidavit of Welliver's exclusive sales agent, who values the watercolors, sight unseen, at $8,000 each. Mognaz Affid., Plaintiffs' Memo. in *Support of Cross–Motion,* Exh. C, ¶ 7. Standing alone, that declaration is insufficient. Because an issue of fact exists as to the value of the lost art works, that question is hereby referred to a Magistrate for determination of damages.

In sum, Gostin's motion for summary judgment as to the first cause of action for breach of contract of carriage is granted. The remaining causes of action are dismissed. Federal Express' motion for summary judgment is denied. These proceedings are hereby referred to Magistrate Naomi Reice Buchwald for an inquest on damages.

SO ORDERED.