**OWENS–CORNING FIBERGLAS CORPORATION, Plaintiff,**

v.

**U.S. AIR and U.S. Air, Inc. and U.S. Express, Inc., Defendants.**

**U.S. AIR and U.S. Air, Inc., Third–Party Plaintiffs,**

v.

**HUDSON GENERAL CORPORATION, Third–Party Defendant.**

No. CV–93–3067.

United States District Court, E.D. New York.

June 1, 1994.

Jennifer A. Toelke, Law Offices of Peter D. Fenzel, New York City, for plaintiff.

Randall K. Roonan, Graham, Miller, Neandross, Mullin & Roonan, New York City, for US Air & US Air, Inc.

John N. Romans, Katten Muchin & Zavis, New York City, for U.S. Exp., Inc.

Charles Schmidt, Kennedy & Lillis, New York City, for Hudson General Corp.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Owens–Corning Fiberglas Corporation ("Owens–Corning") commenced this action against defendants U.S. Air, U.S. Air, Inc. (together "USAir")[1] and U.S. Express, Inc. ("U.S. Express")[2] by Complaint filed July 9, 1993; jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331 and 1337.

Plaintiff alleges that on June 18, 1992, it caused to be shipped and delivered into the custody of defendants at LaGuardia Airport, Queens, New York a shipment of three packages of production bushings (the "bushings"), which were to be transported by defendants to Greenville and Anderson, South Carolina, for delivery to plaintiff. Compl. ¶¶ 7–8. Plaintiff alleges that defendants failed to deliver the bushings "in violation of the applicable Interstate Commerce Commission regulations; in breach of the applicable contracts of carriage as evidenced by the air waybills; and in breach of their duties as common carriers of goods for hire and as bailees of the goods," and that as a result, it has sustained damages in the amount of $817,318.73. Compl. ¶¶ 9, 11.

On October 7, 1993, USAir filed an Answer to the Complaint and asserted a counterclaim against plaintiff and a cross-claim against U.S. Express. In its Answer filed November 9, 1993, U.S. Express asserted a cross-claim against USAir. On October 14, 1993, USAir filed a third-party complaint against Hudson General Corporation ("Hudson"), claiming that if plaintiff suffered the damage alleged in the Complaint, then such damage was caused by the negligence of Hudson, with whom USAir had entered into an indemnification agreement. Third–Party Compl. ¶¶ 4–7. Hudson has not yet answered the third-party complaint.

U.S. Express now moves for partial summary judgment against Owens–Corning, while USAir moves for summary judgment, or, alternatively, for partial summary judgment. Both defendants allege that the terms of their respective contracts limit or preclude their liability to plaintiff. Owens–Corning, in turn, has cross-moved to strike the affidavits submitted by U.S. Express and USAir in support of their respective motions. For the reasons set forth below, U.S. Express's motion for partial summary judgment is granted, USAir's motion for summary judgment is granted and plaintiff's motions to strike are denied.

### A. Terms of U.S. Express Contract

On June 18, 1992, Owens–Corning and U.S. Express entered into an agreement for the transport of the bushings from Jamaica, New York to Owens–Corning's Corporate Alloy Facility in Anderson, South Carolina. U.S. Express's 3(g) Statement ¶¶ 1–2; Plaintiff's Opposition to Defendant U.S. Express, Inc.'s Rule 3(G) Statement ("Pl.'s 3(g) Statement") ¶ 1. U.S. Express subcontracted part of the transportation to USAir; specifically, USAir agreed to fly the bushings from LaGuardia to Greenville, South Carolina, and from there, U.S. Express's agent Acme Delivery was to transport the bushings to Anderson, South Carolina. U.S. Express's 3(g) Statement ¶ 2.

U.S. Express alleges that the agreement with Owens–Corning was in the form of three separate U.S. Express airbills—numbers 623601, 623602 and 623603—each addressing one of the packages of bushings and containing identical terms and conditions. Affidavit of John N. Romans, Executed Jan.

---

1. U.S. Air and U.S. Air, Inc. in fact are one corporation—U.S. Air, Inc.—which does business under the trade name USAir. Memorandum of Law in Support of Defendants U.S. Air and U.S. Air Inc.'s Motion for Summary Judgment ("USAir Mem.") at 1.

2. There is no corporate relationship between U.S. Express and USAir. U.S. Express's 3(g) Statement ¶ 3.

25, 1994 ("Romans Aff.") ¶¶ 1–2 & Ex. A.[3] While Owens–Corning does not dispute that the airbills comprised at least part of the agreement between the parties, it alleges that the copies of the documents annexed to the Romans Affidavit are "textually erroneous,"[4] and further claims that the documents are incomplete "since they failed to include tariffs and rate memos which U.S. Express attempted to incorporate by reference." Pl.'s 3(g) Statement ¶ 4. However, condition 2 on the back side of the airbill clearly stated that such documents were "available for inspection by the parties at U.S. Express Inc. [sic] offices and [were] hereby incorporated into and made part of this contract." Fenzel Aff.Ex. A1–A3.

Each airbill specified a fee based on the weight of the package that was the subject of that airbill; in total, the three packages weighed 158 pounds, for a fee of $232.82. U.S. Express's 3(g) Statement ¶¶ 4–6; Pl.'s 3(g) Statement ¶ 6. It is undisputed that the front side of each airbill contained the following language: "THIS SHIPMENT IS SUBJECT TO CONDITIONS OF CONTRACT LISTED ON BACK OF THIS AIRBILL (PLEASE READ)." Fenzel Aff.Ex. A1. It also is undisputed that the back side of each airbill contained the following provision:

> *Forwarder liability is agreed and understood to be $.50 per pound* multiplied by the number of pounds (or fraction thereof) of each piece(s) of the shipment which may have been lost, damaged or destroyed, (but no less than $50.00 per shipment), *unless a higher value is declared herein and applicable charges paid hereon,* or the actual value of such piece(s), whichever is less, plus the amount of any transportation charges for which the Forwarder may be liable or the amount of any damages actually sustained, whichever is the least

amount.... Forwarder shall not be liable for special or consequential damages.

Fenzel Aff.Ex. A1 (emphasis added).

The front side of each airbill contained a box designated "declared value." U.S. Express alleges that this box was to be completed by the shipper if it wished to pay a higher price for higher limits of liability, U.S. Express's 3(g) Statement ¶ 10; however, Owens–Corning contends that "[n]othing in the conditions of the contract instructed the shipper to place any information in any of the boxes on the front side of the air waybills." Pl.'s 3(g) Statement ¶ 10. Nevertheless, it is undisputed that in this case, the "declared value" box was left blank. Finally, the back of the airbill contained a provision stating that "[a]ny shipment having a declared value of more than $25,000 must be reported in writing to U.S. Express Inc. prior to pickup so security measures may be taken." Fenzel Aff.Ex. A1. While plaintiff does not dispute that this provision was included in the airbill, it alleges that U.S. Express had physical custody of the cargo before it issued the airbills. Pl.'s 3(g) Statement ¶ 11.

U.S. Express acknowledges that the bushings were lost, but alleges that the loss occurred at some point following its tendering of the goods to USAir and preceding USAir's flight to Greenville. U.S. Express's 3(g) Statement ¶ 13.

### B. *Terms of USAir Contract*

On June 18, 1992, U.S. Express entered into a contract with USAir pursuant to which USAir agreed to fly the bushings from LaGuardia Airport to Greenville, South Carolina; as stated above, U.S. Express's agent and consignee, Acme Delivery, then was to transport the bushings from Greenville to Anderson, South Carolina. U.S. Express's

---

**3.** Copies of these airbills are annexed to the Romans Affidavit as Exhibit A. While the shipper on each airbill was identified as Woltman & Bonventre, plaintiff does not dispute that Woltman & Bonventre was acting as its agent in its capacity as Custom House Broker and Foreign Freight Forwarder. *See* Romans Aff. Ex. C.

**4.** In its Reply Memorandum of Law, U.S. Express agreed to stipulate that Exhibits A1–A3 to the Affidavit of Peter D. Fenzel in Opposition to Defendant's Motion for Summary Judgment and

in Favor of Plaintiff's Motion to Strike Counsel's Affirmation, Sworn to Mar. 4, 1994 ("Fenzel Aff."), rather than Exhibit A to the Romans Affidavit, were the airbills governing the parties' contractual relationship. Reply Memorandum of Law in Support of Defendant U.S. Express's Motion for Partial Summary Judgment ("U.S. Express Reply Mem.") at 3. The court accordingly will look to the Exhibits annexed to the Fenzel Affidavit.

3(g) Statement ¶¶ 1–2. USAir issued air waybill 037 LGA 6982 4123 for the bushings, which was signed by USAir as carrier and U.S. Express as shipper; USAir avers that "[t]his is the only contract known to exist which reflects USAir's agreement to handle the goods in controversy." Affidavit of Barbara G. Mullaney, Sworn to Jan. 25, 1994 ("Mullaney Aff.") ¶ 3.[5] It is undisputed that Owens–Corning was not named in the air waybill.

Paragraph 9 of the Conditions of Contract printed on the back side of the air waybill, titled "Shipper Certification," stated as follows:

> By tendering the shipment to Carrier for transportation, the Shipper [identified on the air waybill as U.S. Express], for himself and *all other parties having interest in the shipment,* agrees to the limitations set forth in Carrier's rules and regulations and affirms the description of the shipment as recited on this Airbill . . . .

Mullaney Aff.Ex. A (emphasis added).[6] Owens–Corning originally tendered a claim to USAir under the air waybill; by letter to Ms. Mullaney dated May 25, 1993, counsel for plaintiff asserted that "[b]oth the shipper [U.S. Express] and the consignee [Acme Delivery] on your airway bill were, in effect, acting as agents on behalf of Owens–Corning and Owens–Corning is entitled to enforce the conditions of the contract which you issued." Mullaney Aff.Ex. D.[7] However, Owens–Corning now submits that it is not bound by the limitations of the contract. Pl.'s 3(g) Statement 2 ¶ 7. In response to the claim filed by plaintiff, USAir, in turn, notified plaintiff that "[s]ince [our] contract is with the shipper and the consignee, we cannot accept a claim from persons not listed on the airbill"; indeed, USAir informed plaintiff that it had accepted a claim from U.S. Express and was in the process of settling that claim. Reply Affidavit of Randall K. Roonan, Sworn to Mar. 8, 1994 ("Roonan Reply Aff.") Ex. B. Nevertheless, USAir now seeks to use the limitation of liability provision contained in the air waybill against Owens–Corning.

The air waybill reflected that the bushings weighed 158 pounds, and that the total amount prepaid for shipment was $41.97. It contained a box for "declared value for carriage," which was left blank. Mullaney Aff. Ex. A. Paragraph 12 of the Conditions of Contract printed on the back of the air waybill—and specifically referred to on the front of the air waybill—provided as follows:

LIMITATIONS OF LIABILITY.

(a) *For shipments not having a declared value,* the total liability of Carrier shall in no event exceed $9.07 per pound of each piece of the shipment which may have been delayed, lost, damaged, or destroyed (but not less than $50.00 per shipment) or the actual value of such piece, whichever is less, plus the amount of any transportation charges for which Carrier may be liable.
(b) *For shipments having a declared value,* the total liability of Carrier shall in no event exceed the declared value of the shipment/piece or the actual value of the shipment/piece, whichever is less, plus the amount of any transportation charges for which Carrier may be liable.

. . . .

Mullaney Aff.Ex. A (emphasis added).

In addition, the air waybill specifically referred to and incorporated the "governing

---

**5.** Plaintiff's contention that there is a question concerning whether the air waybill was issued at the time of the disappearance of the bushings, Plaintiff's Opposition to Defendant U.S. Air, Inc.'s Rule 3(G) Statement ("Pl.'s 3(g) Statement 2") ¶ 4, is belied by the face of the air waybill, which is stamped with the date and time. *See* Mullaney Aff. Ex. A.

**6.** Similar terms are contained in section G32 of "the most recent official Airline Freight Rate Tariff of Carrier," which is incorporated by reference into the air waybill. Specifically, the relevant portion of section G32 states that "[b]y tendering the shipment to Carrier for transporta-

tion, the shipper, for himself and all other parties having interest in the shipment, agrees to the limitations set forth in these rules . . . ." Mullaney Aff. Ex. B. Plaintiff disputes that the tariff rule "extends the alleged limitation of liability to all parties having an interest in the shipment." Pl.'s 3(g) Statement 2 ¶ 6.

**7.** Plaintiff's characterization of this letter and other correspondence between plaintiff's "former" counsel and Ms. Mullaney as "settlement negotiations," *see* Pl.'s 3(g) Statement 2 ¶ 2, is curious given that nothing in the correspondence refers or relates to settlement.

rates, rules and classifications stated in the most recent official Airline Freight Rate Tariff of Carrier" (the "Tariff"), Mullaney Aff. Ex. A; a copy of the Tariff in effect on the date of the subject shipment is annexed to the Mullaney Affidavit as Exhibit B,[8] and contains several provisions relevant to USAir's motion. First, the Tariff stated that "[t]he number of pieces in a shipment and an accurate description of the contents must be included on the air waybill." Mullaney Aff. Ex. B at G12. It is undisputed that the only description of the goods contained on the air waybill in this case was "M/P," which in common usage denotes "Machine Parts." Mullaney Aff. ¶ 13.

The Tariff also included a provision limiting USAir's liability for goods not having a declared value that is consistent with the limitations contained in paragraph 12 of the air waybill, quoted above. Mullaney Aff.Ex. B at G32. Tariff Rule G52 outlined the charges for shipments *with* a declared value; if the shipper declared a value on the entire shipment, an additional transportation charge of $.40 was required for each $100 by which such higher value exceeded the value of the shipment. Mullaney Aff.Ex. B at G52. USAir alleges that if the shipper had declared the full value of the bushings as alleged in the Complaint, the additional declared value charges would have totalled $3,263.83. Mullaney Aff. ¶ 9. Instead of declaring a higher value, USAir avers, plaintiff chose to insure the cargo through Simons & Company of Antwerp, Belgium. Mullaney Aff.Ex. D. Plaintiff disputes that this insurance was a substitute for declaring the value of the cargo to the air carrier, and maintains that cargo insurance indemnifies the insured regardless of the liability of the carrier. Pl.'s 3(g) Statement 2 ¶ 9.

Tariff Rule G30 provided that USAir shall not be liable for loss, damage, delay or "other result" caused by, *inter alia,* the act or default of the shipper or consignee; the nature of the shipment; or the violation by the shipper of any of the rules contained in the Tariff or the air waybill, including improper or insufficient marking and "failure to observe any of the rules relating to shipments not acceptble [sic] only under certain conditions." Mullaney Aff.Ex. B at G30. Finally, the Tariff contained an indemnification clause which provided as follows:

> The shipper and consignee shall be liable, jointly and severally, to pay or indemnify for all claims, fines, penalties, damages, costs or other sums which may be incurred, suffered or dispersed by the Carrier by reason of any violation of any applicable rules or any other default of the shipper or other parties with respect to a shipment.

Mullaney Aff.Ex. B. at G34. Owens–Corning "contests that it agreed to indemnify US Air for any reason." Pl.'s 3(g) Statement 2 ¶ 12.[9]

## DISCUSSION

### I. *Subject Matter Jurisdiction*

As a preliminary matter, but one of vital importance, the court at oral argument on March 11, 1994, *sua sponte* raised the question of whether it has subject matter jurisdiction over this case, and asked the parties to brief that issue. Upon review of the relevant caselaw and the arguments presented by the parties, the court concludes that it indeed has subject matter jurisdiction over the present action.

As stated above, the Complaint here alleges jurisdiction pursuant to 28 U.S.C. §§ 1331

---

8. Plaintiff disputes that this document is a complete copy of the Tariff, but does not specify in what respects the document is incomplete. Pl.'s 3(g) Statement 2 ¶ 8.

9. USAir also alleges that the provision of the Tariff requiring that shipments containing "articles of extraordinary value" be subject to advance arrangements is relevant; this requirement is expanded upon in the portion of the USAir cargo manual pertaining to shipments of high value articles, which plaintiff concedes is part of the contract of carriage. Pl.'s 3(g) State-

ment 2 ¶ 11. Moreover, USAir alleges that if it had been aware of the true value of the goods, it would have placed them in a cage it maintains at LaGuardia for high valued cargo. Mullaney Aff. ¶ 14 & Ex. E. However, given that the parties have not explained exactly what production bushings are, the identity of the bushings as "articles of extraordinary value," as defined in provision G2, and the applicability of these provisions, are uncertain. *See* Mullaney Aff. Ex. B. at G2 & G18.

and 1337.[10] The court has serious doubts regarding whether jurisdiction lies under § 1337, which gives district courts original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce....," because the Interstate Commerce Act would appear to be related only tangentially, if at all, to plaintiff's causes of action.[11] *See Zimmerman v. Conrail*, 550 F.Supp. 84, 85 (S.D.N.Y.1982) (finding no federal jurisdiction where although defendant Conrail's operations were structured under Regional Rail Reorganization Act, plaintiff's claims for breach of contract and tortious misconduct were only tangentially related to Act); *cf. Ore–Ida Foods, Inc. v. Richmond Transp. Servs., Inc.*, 783 F.Supp. 382, 385–86 (N.D.Ill.1992) (finding no federal jurisdiction in action to recover damages for goods "mangled" in transport by motor common carrier where section of Revised Interstate Commerce Act providing that Interstate Commerce Commission may require a motor carrier to obtain insurance did not create federal cause of action).

■ The court is satisfied, however, that jurisdiction lies under § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has held that jurisdiction under this section "will support claims founded upon federal common law as well as those of a statutory origin." *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *see also Ivy Broadcasting Co., Inc. v. American Tel. & Tel. Co.*, 391 F.2d 486, 492 (2d Cir.1968) ("The word 'laws' in § 1331 should be construed to in-

clude laws created by federal judicial decisions as well as by congressional legislation."). Because, as discussed at greater length below, the validity of an interstate carrier's limitation of liability is governed by federal common law, *see, e.g., United States Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1223–26 (S.D.N.Y.1989), the court concludes that it has jurisdiction under § 1331. *Accord Angela Cummings, Inc. v. Purolator Courier Corp.*, 670 F.Supp. 92, 94 (S.D.N.Y.1987) (suit against air carrier alleging claims for breach of contract, conversion and punitive damages based on failure to deliver goods was "governed by federal common law, which, pursuant to § 1331, confers original jurisdiction upon this court.") (*citing Illinois v. City of Milwaukee, supra*). Having resolved the question of jurisdiction, the court now turns to the substantive issues before it.

## II. *Summary Judgment Standards*

■ Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, "if the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (when moving party has carried its burden under Rule 56(c), oppo-

10. U.S. Express argues in its Memorandum of Law Regarding Jurisdiction that this court also has jurisdiction based on diversity of citizenship, notwithstanding the fact that both plaintiff and USAir are incorporated in Delaware. The basis for U.S. Express's argument is that "[p]laintiff's attorney informed [it] by telephone on March 8, 1994, that its insurance carrier, G. Simons [alleged to be a Belgian insurance company], had previously indemnified Owens–Corning for the entire amount of loss at issue in the present suit. Accordingly, G. Simons, as subrogee, is the only real party-in-interest." The record is insufficiently developed with respect to whether "Owens–Corning must be replaced as the plaintiff in

this action," as U.S. Express argues. In any event, as discussed below, the court finds jurisdiction lies under 28 U.S.C. § 1331.

11. While in the Complaint, plaintiff alleges that defendants violated "applicable Interstate Commerce Commission regulations," Compl. ¶ 9, in its Rule 3(g) Statement, plaintiff clarifies that paragraph 9 states a cause of action for "breach of contract, breach of bailment and conversion" only. Moreover, none of the parties rely on or even mention any provisions of the Interstate Commerce Act in their papers.

nent must do more than simply show that "there is some metaphysical doubt as to the material facts"). In considering a motion for summary judgment, the judge's function is not himself to weigh the evidence and determine the truth of an issue, but merely to determine whether there is an issue to be tried. *Id.*, 477 U.S. at 249, 106 S.Ct. at 2510.

In addition, Fed.R.Civ.P. 56(e) directs that affidavits submitted in support of and in opposition to a summary judgment motion "shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge ... and a hearsay affidavit is not a substitute for the personal knowledge of a party[.]").

## III. *Plaintiff's Cross–Motions to Strike*

Plaintiff has cross-moved to strike both the Romans Affidavit and the Mullaney Affidavit for failing to comply with the requirements of Rule 56(e). More specifically, plaintiff alleges that the Romans Affidavit is deficient because it is neither sworn to nor based on personal knowledge, Fenzel Aff. ¶¶ 2, 4, and that the Mullaney Affidavit should be stricken on the grounds that it is not based on personal knowledge and that it "improperly contains legal argument which should be confined to the memorandum of law." Affidavit of Peter D. Fenzel in Opposition to Defendant[ ] U.S. Air Inc.'s Motion for Summary Judgement [sic] and in Favor of Plaintiff's Motion to Strike Defendant's Claim Adjustor's Affidavit ("Fenzel Aff. 2") ¶¶ 2–4.

### A. *The Romans Affidavit*

■ Plaintiff's arguments with regard to the Romans Affidavit can be disposed of readily. Although it properly should be called a declaration, rather than an affidavit,

the fact that the Romans Affidavit is not sworn to is irrelevant given that it is in compliance with the requirements of 28 U.S.C. § 1746. Moreover, while it is true that the Romans Affidavit is not based on the affiant's personal knowledge, because the clear function of the Affidavit is to identify and introduce into evidence the exhibits annexed thereto, the purposes underlying Rule 56(e)—to safeguard and legitimate the evidence used to decide a motion for summary judgment—Edward Brunet, Summary Judgment Materials, *reprinted in* 147 F.R.D. 647, 658 (1993)—are not disserved by considering the Affidavit on this motion. Accordingly, plaintiff's cross-motion to strike the Romans Affidavit is denied.

### B. *The Mullaney Affidavit*

■ Plaintiff's cross-motion to strike the Mullaney Affidavit similarly is without merit. First, while Ms. Mullaney does not expressly state that the Affidavit is based on her personal knowledge, an examination of Exhibits D and F to the Mullaney Affidavit—which are letters addressed to her from plaintiff's attorneys regarding the matters at issue—reveals that Ms. Mullaney was at least to some extent personally involved.[12] In any event, like the Romans Affidavit, the primary purpose of the Mullaney Affidavit is to identify relevant documents and introduce them into evidence, and Ms. Mullaney's testimony clearly is competent to serve these functions. Finally, the court disagrees with plaintiff's characterization of the Mullaney Affidavit as containing legal argument, and even if it did, this would not render the Mullaney Affidavit improper.

### IV. *Plaintiff's Motion Pursuant to Rule 56(f)*

■ As plaintiff conceded at oral argument, its opposition to defendants' summary judgment motions primarily is based on the argument that the motions are premature within the meaning of Fed.R.Civ.P. 56(f). Rule 56(f) provides that a court may order a

---

12. Plaintiff's argument that "booking, freighting and contracting are not within [Ms. Mullaney's] areas of competence" is puzzling given that Ms. Mullaney does not provide a description of her duties or responsibilities as Cargo/Customs Claims Analyst. *See* Memorandum of Law in Opposition to Defendant U.S. Air, Inc.'s Motion for Summary Judgment and in Favor of Plaintiff's Motion to Strike U.S. Air, Inc.'s Adjustor's Affidavit ("Pl.'s Mem. 1") at 3.

continuance to permit a party opposing a summary judgment motion to conduct discovery to ascertain "facts essential to justify the party's opposition...." "[A] party seeking such discovery must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989) (*citing Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985)). A district court's denial of a motion pursuant to Rule 56(f) is subject to reversal only for an abuse of discretion. *Burlington Coat Factory Warehouse*, 769 F.2d at 925.

■ Owens–Corning's application pursuant to Rule 56(f) initially is deficient because the Fenzel Affidavits do not comply with the requirements articulated in *Hudson River Sloop Clearwater*. Plaintiff attempts to explain further the basis for its argument pursuant to Rule 56(f) in its memoranda of law. First, it ambiguously alleges that during the pretrial conference on November 16, 1993, defendants "prevailed upon" Magistrate Judge Azrack to preclude pretrial discovery until after the defendants had moved for summary judgment. Pl.'s Mem. 1 at 1. It further alleges that summary judgment is premature at this point because it is "not privy to the operational facts relating to the disappearance of its cargo of production bushings," and the defendants alone are in control of those facts. Pl.'s Mem. 1 at 5. With respect to U.S. Express, plaintiff argues that the terms of U.S. Express's tariffs, classifications and freight memoranda are not known to plaintiff. Plaintiff's Memorandum of Law in Opposition to Defendant U.S. Express, Inc.'s Motion for Summary Judgment and in Support of Plaintiff's Motion to Strike Counsel's Affirmation ("Pl.'s Mem. 2") at 7. With respect to USAir, plaintiff claims that "[w]hether USAir even issued its air

waybill at the time of delivery is unknown to plaintiff." Pl.'s Mem. 1 at 5.

The foregoing allegations fail to explain adequately the facts plaintiff seeks to learn through discovery, or how those facts could be expected to create a genuine issue of material fact; it is settled that "a 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant"— which is all that plaintiff's arguments here amount to—is insufficient to justify a continuance pursuant to Rule 56(f). *Isaacs v. Mid Am. Body & Equip. Co.*, 720 F.Supp. 255, 257 (E.D.N.Y.1989) (citation omitted). In addition, apart from its oblique reference to the proceedings before Magistrate Judge Azrack, plaintiff has not described the efforts it has made to obtain discovery or why those efforts have been unsuccessful. Indeed, USAir contends that since the Complaint was filed in July 1993, plaintiff has not made a single request for discovery. Memorandum of Law in Reply to Plaintiff's Opposition to U.S. Air and U.S. Air, Inc.'s Motion for Summary Judgment and in Opposition to Plaintiff's Motion to Strike Barbara Mullaney's Affidavit ("USAir's Reply Mem.") at 1. Accordingly, plaintiff's reliance upon Rule 56(f) is unavailing, and its application is denied.[13]

## V. *Enforceability of Limitation of Liability Provisions*

■ Historically, the area of interstate contracts of carriage has been "an exclusively federal realm"; since the deregulation of air carriers pursuant to the Airline Deregulation Act of 1978, "the Second Circuit has returned to federal common law for guidance when determining the validity of a carrier's limitation of liability." *United States Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1223 (S.D.N.Y.1989); *see also Welliver v. Federal Express Corp.*, 737 F.Supp. 205, 207 (S.D.N.Y.1990) ("[T]he declared value limitation of liability has survived deregulation of the airline industry as part of the federal common law of air carrier liability."). The liability of defendants in this case therefore is governed by federal common law. *Accord*

---

**13.** The court also rejects plaintiff's argument that USAir's motion for summary judgment should be denied due to its failure to comply with Local

Rule 3(g). While USAir's Rule 3(g) Statement may not be a model of conciseness, this technicality by no means is fatal to USAir's motion.

United States Gold Corp., 719 F.Supp. at 1223–24; *Ruston Gas Turbines, Inc. v. Pan Am. World Airways*, 757 F.2d 29, 30 (2d Cir.1985); *Baloise Ins. Co., Ltd. v. United Airlines, Inc.*, 723 F.Supp. 195, 198 (S.D.N.Y. 1989).

■ A limitation of liability provision contained in a contract of carriage generally is enforceable if

(1) it resulted from a fair, open, just, and reasonable agreement between carrier and shipper, entered into by the shipper for the purposes of obtaining the lower of two or more shipping rates proportioned to the amount of risk, and (2) the shipper was given the option of additional recovery upon paying a greater rate.

*Williams Dental Co., Inc. v. Air Express Int'l*, 824 F.Supp. 435, 441 (S.D.N.Y.), *aff'd*, 17 F.3d 392 (2d Cir.1993); *see also Welliver*, 737 F.Supp. at 207. In determining whether these requirements have been met, courts have considered the following factors: (1) whether the carrier has given adequate notice of the limitation of liability to the shipper; (2) the economic stature and commercial sophistication of the parties; and (3) the availability of "spot" insurance to cover the shipper's exposure. *Welliver*, 737 F.Supp. at 207 (*citing United States Gold Corp.*, 719 F.Supp. at 1225). The reasonableness of notice is a question of law to be determined by the court. *Welliver*, 737 F.Supp. at 207 (*citing Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir.1987)). As the court noted in *United States Gold Corp.*, "[i]n the years since deregulation, courts have consistently continued to apply these principles to enforce the declared value limitation of liability provision in airbills and other contracts of carriage of ... small package express carriers." 719 F.Supp. at 1225 (citing cases).

### A. The U.S. Express Contract

■ Applying these standards first to the limitation of liability provision contained in the U.S. Express contract, it is clear that this provision is valid and enforceable. First, as a matter of law, the court finds that U.S. Express gave adequate notice of the provision by expressly referring on the front side of the airbills to the conditions of contract contained on the back side; the limitation of liability provision then clearly is reproduced on the back side. Plaintiff's effort to generate a question of fact by stating that the airbills were incomplete because they did not include the tariffs and rate memos which U.S. Express incorporated by reference into the airbills is unavailing; the airbills clearly stated that such documents were available for inspection at U.S. Express's office, and in any event, the terms of the limitation of liability provision are undisputed. *Cf. Welliver*, 737 F.Supp. at 207 (shipper *not* afforded reasonable notice where courier told shipper he was in a hurry and did not give shipper opportunity either to fill out or review airbill containing limitation of liability provision). It also is undisputed that both parties are sophisticated commercial entities. Finally, given that plaintiff procured insurance for the goods from Simons & Company, it is clear that plaintiff had the opportunity to obtain and in fact obtained full coverage. *See United States Gold Corp.*, 719 F.Supp. at 1225 (finding third factor satisfied where plaintiff secured protection for its shipment from an outside insurer). Moreover, notwithstanding plaintiff's assertion that the airbill did not specifically instruct it "to place any information in any of the boxes on the front side of the air waybills," Pl.'s 3(g) Statement ¶ 10, it is evident that the shipper was given the opportunity to obtain full coverage from U.S. Express by declaring a higher value and paying applicable charges, but chose not to do so.

■ A valid limitation of liability clause also applies to claims sounding in tort, and is enforceable against a claim of conversion. *United States Gold Corp.*, 719 F.Supp. at 1225; *see also Baloise Ins. Co., Ltd.*, 723 F.Supp. at 198 ("Absent some affirmative proof of conversion, courts applying federal common law will enforce a contractual limitation of liability provision."); *Wagman v. Federal Express Corp.*, 844 F.Supp. 247, 250 (D.Md.1994) ("Actions against a common carrier, whether sounding in contract or tort, are governed by federal law."). Moreover, "a plaintiff alleging conversion against a common carrier must plead and prove willful or intentional misconduct of the common carri-

er," *United States Gold Corp.*, 719 F.Supp. at 1225–26. While plaintiff here claims that "[f]actual circumstances such as conversion of goods by the defendant, gross negligence of the defendant, and tortious conduct of the defendant outside the contract may obviate even a valid contractual limitation," Pl.'s Mem. 2 at 5–6, it has failed to raise more than a metaphysical question as to whether such circumstances exist. Its conclusory conversion claim thus cannot withstand U.S. Express's motion for summary judgment.

■■■■ With respect to plaintiff's cause of action sounding in bailment, the fact that U.S. Express may have stored the goods prior to interstate shipment does not mean that it should be treated as a warehouseman. *See Baloise Ins. Co., Ltd.*, 723 F.Supp. at 199 (holding that defendant carrier "should not be treated as a warehouseman simply because it stores goods temporarily in a warehouse facility prior to transport."). Plaintiff has failed to allege, and the record does not show, facts sufficient to conclude that U.S. Express acted as a bailee of the bushings, and summary judgment in U.S. Express's favor is appropriate on this claim, as well.

It bears noting that this disposition of plaintiff's tort claims also finds support in the more general proposition that "[w]here … it is clear plaintiffs seek damages for breach of the carriage contract … they may not avoid that contract's liability limits by framing their complaint in terms of bailment and tort. They must proceed, if at all, on a breach of contract theory." *Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145, 1148 (N.D.Ill.1985); *cf. Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F.Supp. 936, 938 (S.D.N.Y. 1989) ("If the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort."). In short, the declared value limitation of liability provision in the U.S. Express contract is valid and enforceable against all of plaintiff's claims, and U.S. Express's motion for partial summary judgment limiting its liability in accordance with

the terms of the contract accordingly is granted.

### B. *The USAir Contract*

■■■■ Because the parties to the USAir air waybill are identified as U.S. Express and Acme Delivery and the air waybill is signed by those parties only, before reaching the question of whether the limitation of liability provision in that agreement is enforceable, the court must determine whether Owens–Corning is entitled to maintain a cause of action against USAir based on the contract.

All parties have "argued out of both sides of their mouths" with respect to this question. Owens–Corning now disputes that it is "certified and is bound by the limitations alleged by USAir," Pl.'s 3(g) Statement 2 ¶ 7; however, in a letter to Ms. Mullaney dated May 25, 1993, plaintiff argued that "[b]oth the shipper [U.S. Express] and the consignee [Acme Delivery] on your airway bill were, in effect, acting as agents on behalf of Owens–Corning and Owens–Corning is entitled to enforce the conditions of the contract which you issued." Mullaney Aff. Ex. D. Further, at oral argument, Owens–Corning contended that it was entitled to sue USAir based on the contract because it was a third-party beneficiary to the contract. Tr. 20. USAir, in turn, initially informed plaintiff that it could not "accept a claim from persons not listed on the airbill," Roonan Reply Aff. Ex. B, but in its summary judgment papers, USAir argues that the limitation of liability provision in its air waybill is effective against plaintiff.[14] At oral argument, counsel for USAir argued that there was nothing in the air waybill "that indicates that this was Owens–Corning's goods. Our contract was with [U.S. Express]. Any dispute, as far as a contract is between myself and [counsel for U.S. Express]." Tr. 21. Finally, U.S. Express argues for the first time in its Memorandum of Law Regarding Jurisdiction that Owens–Corning was merely an incidental beneficiary to the contract between USAir

---

14. Presumably, this argument by USAir depends on the provision of the air waybill stating that by tendering the shipment to USAir for transportation, U.S. Express (the shipper), "for himself and all other parties having interest in the shipment," agreed "to the limitations set forth in Carrier's rules and regulations and affirm[ed] the description of the shipment" as recited on the air waybill. Mullaney Aff. Ex. A.

and U.S. Express, and therefore has no right to sue on the contract between those parties.

Notwithstanding this barrage of contradictory arguments, it is evident that plaintiff may not maintain its claims against USAir because it was neither a party to the contract between USAir and U.S. Express nor an intended beneficiary of that agreement. In this regard, reference to *Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145 (N.D.Ill. 1985) is instructive and indeed dispositive. In that case, plaintiffs made arrangements with Inman Nationwide Shipping to ship the remains of their decedent from Chicago to Alabama. Inman contracted with Republic Airlines to transport the remains by air from Chicago to Mississippi. Norwood Funeral Home then was to transport the remains from Mississippi to Alabama. Republic challenged plaintiffs' standing to assert a breach of contract claim against it; the court's discussion of that issue bears repeating at length.

> Republic points out the airbill identifies Inman as the shipper and Norwood as the consignee. It nowhere identifies plaintiffs as parties to the carriage contract. Under those circumstances, Republic argues, its liability runs to the parties with whom it dealt, not to parties who stand at some remove from the transaction.
>
> That argument does not directly address plaintiffs' allegation ... that they are third-party beneficiaries of the carriage contract with Republic, but it does point to the poverty of that assertion. It is hornbook contract law that a third-party beneficiary must be an *intended* beneficiary of the performance of the contract.... With Republic having no specific awareness of plaintiffs' existence or of their interest in the contract, it is wholly implausible to conclude they were intended beneficiaries. At most they were incidental beneficiaries of Republic's performance and as such have no right to sue....
>
> To turn from the general law to the specific, the law governing the liability of interstate carriers makes plain that in cases involving an intermediate freight handler between the carrier and the original shipper, the carrier's liability runs to the middleman alone....

605 F.Supp. at 1149–50 (citations omitted).

Accordingly, while Owens–Corning may claim against U.S. Express based on the airbills the two parties entered into, and while USAir and U.S. Express may assert claims against each other based on the air waybill, Owens–Corning is not entitled to maintain a cause of action for breach of contract directly against USAir, and USAir is entitled to summary judgment against Owens–Corning based on the contract. In addition, USAir is entitled to summary judgment on plaintiff's tort claims because, as discussed above, plaintiff has failed to generate a question of material fact regarding whether USAir is liable for conversion or whether it acted as a bailee of the bushings.

### CONCLUSION

For the reasons stated above, U.S. Express's motion for partial summary judgment is granted and USAir's motion for summary judgment is granted. The cross-motions by Owens–Corning to strike the affidavits submitted by both defendants are denied.

SO ORDERED.