747 F.2d 803
 1987 A.M.C. 911
 PUERTO RICO MARITIME SHIPPING AUTHORITY, et al., Plaintiffs,
Appellants,
v.
CROWLEY TOWING AND TRANSPORTATION COMPANY, Defendant,
Third-Party Plaintiff, Appellee,
v.
STATE FAIR PRODUCTION, INC., et al., Third-Party Defendants,
Appellees.
PUERTO RICO MARITIME SHIPPING AUTHORITY, et al., Plaintiffs, Appellees,
v.
CROWLEY TOWING AND TRANSPORTATION COMPANY, Defendant,
Third-Party Plaintiff, Appellant,
v.
STATE FAIR PRODUCTION, INC., et al., Third-Party Defendants,
Appellees.
 Nos. 84-1092, 84-1116.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 11, 1984.
Decided Nov. 2, 1984.
 
 Paul E. Calvesbert, San Juan, P.R., with whom Calvesbert & Brown, San Juan, P.R., was on brief, for Puerto Rico Maritime Shipping Authority, et al.
 Luis Sanchez-Betances, Hato Rey, P.R., with whom Cepeda, Sanchez-Betances & Sifre, Hato Rey, P.R., was on brief, for Crowley Towing and Transp. Co.
 Before COFFIN, Circuit Judge, SKELTON,* Senior Circuit Judge, and BREYER, Circuit Judge.
 BREYER, Circuit Judge.
 
 
 1
 Plaintiff Navieras (a shorthand term for the Puerto Rico Maritime Shipping Authority and Puerto Rico Marine Management, Inc.) leased eleven 'intermodal' trailers to a carnival operator called State Fair. It told State Fair that the trailers were to be used for transportation between the continental United States and Puerto Rico. When Navieras learned that State Fair planned to ship the carnival to Venezuela, Navieras warned State Fair not to use the eleven trailers. State Fair ignored this warning. It packed the carnival into one hundred or more trailers which included Navieras' eleven. And, it hired defendant Crowley, a shipping company, to take the carnival south. When the carnival reached Venezuela, it became embroiled in various legal difficulties, which led to the seizure of the eleven trailers along with other carnival property. The trailers evidently remain in Venezuela. Navieras sued Crowley for wrongfully taking them there. After a two-day bench trial, the district court found for Crowley, and Navieras appeals.
 
 
 2
 The provision of the Puerto Rico Civil Code that governs this diversity action is section 1802. It allows recovery for "an act or omission [which] causes damage to another through fault or negligence." 31 L.P.R.A. Sec. 5141. See Heirs of Sorba v. Vinas, 49 P.R.R. 31, 35-36 (1935). The parties have argued at some length about whether Navieras' claim should be characterized as "conversion," or "negligence," or both. But, there is no need to decide if one should view Navieras' civil law action through either of these common law lenses, for the validity of both claims turns on one dispositive issue--namely whether Crowley knew, or had reason to know, that Navieras' trailers were not supposed to go to Venezuela.
 
 
 3
 The district court found that when State Fair delivered the carnival to Crowley, Crowley did not know that State Fair lacked any necessary shipping permission, nor did it know enough to oblige it to make further inquiries. Navieras argues that these district court findings are "clearly erroneous." Fed.R.Civ.P. 52(a). We have read the voluminous record in this case, however, and we conclude that the district court's findings are adequately supported. A carrier ordinarily need not investigate the ownership of the goods that it ships. See Prosser & Keeton on Torts Sec. 15 at 95 (1984 ed.). A common carrier can assume that one presenting goods for shipment either owns them or has authority to ship them. See, e.g., Nanson v. Jacob, 93 Mo. 331, 6 S.W. 246, 249 (1887); Glass v. Allied Van Lines, Inc., 450 S.W.2d 217, 220 (Mo.1970). And, it seems reasonable for a private carrier ordinarily to make a similar commonsense assumption. Cf. Lloyd v. Haugh & Keenan Storage & Transfer Co., 223 Pa. 148, 72 A. 516, 517 (1909) ("It would be intolerable if every one delivering goods to an express company ... could be required to first establish his ownership before transportation could be secured."). The issue here is whether special circumstances did raise, or should have raised, the carrier's suspicions and imposed a duty upon it to inquire further.
 
 
 4
 Navieras finds such special circumstances in the fact that Crowley's vice president, Capt. William Coleman, watching the loading of the carnival onto the barges, noticed that at least two trailers bore logos of companies that lease intermodal trailers, namely Sea-land and Chessy System (not Navieras). Coleman then drafted an "indemnity letter," which purported to shift to State Fair any liability that might arise from Crowley's shipping trailers that did not belong to State Fair. Navieras argues that if Coleman was sufficiently worried about the trailers to draft an indemnity letter, he was sufficiently aware of a likely problem to inquire further into the trailers' ownership.
 
 
 5
 Capt. Coleman's testimony, however, casts the letter in a somewhat different light. It suggests that seeing the logos did not make Coleman worry about State Fair's lack of authority to ship the trailers out of Puerto Rico; rather it made him wonder whether Venezuelan carriers would be able to ship them back to Puerto Rico by common carrier after they arrived. He feared that the trailers' original owners (say, Sea-Land or Chessy) might not have entered into the necessary intermodal transport agreements with the other Venezuelan shippers; if not, the trailers would languish in Venezuela until the fair was over, at which time Crowley's barges could bring them back to Puerto Rico. If the trailers were 'stuck' in Venezuela, the trailers' owners (presumably Sea-Land or Chessy) might sue Crowley for damages caused by the delay. Coleman apparently wanted to make certain that State Fair, not Crowley, was responsible for any such loss of rental value.
 
 
 6
 While the parties dispute the precise meaning of what Coleman said, the district court might reasonably have interpreted Coleman's testimony in this way. And, so interpreted, Coleman's reasons for drafting the indemnity letter are at best only distantly connected to the relevant question--whether Crowley should have suspected that State Fair did not have authority to ship Navieras' trailers. The connection is weak enough to leave the district court's 'no-negligence' finding with support. And, without a finding of negligence, Crowley cannot be found liable under Civil Code Sec. 1802, whether or not one characterizes the action as "conversion." See Restatement (Second) of Torts Sec. 223-24 at 436-37; Heirs of Sorba v. Vinas, supra.
 
 
 7
 Navieras also argues that Crowley should be held liable under a 'quasi-contractual' theory of 'unjust enrichment.' See Puerto Rico Civil Code Sec. 1787, 31 L.P.R.A. Sec. 5091. It is difficult for us to see how Crowley was 'enriched,' for Crowley does not have the trailers and has not collected any money for the use of them. And, it is also difficult to see that Crowley acted 'unjustly,' for the district court found that Navieras knew that State Fair was moving the carnival to Venezuela and could have told Crowley not to ship the trailers. The district court found, instead, that Navieras simply "stood by and watched the trailers go to Venezuela without asserting [its] rights." Slip op. at 5. Regardless, Navieras did not include this claim in its complaint; it did not seek to amend the complaint; and the issue is not properly before us.
 
 
 8
 Finally, Crowley has cross-appealed seeking attorney's fees. The district court, in denying fees, implicitly found that Navieras was not "obstinate" in pursuing its legal claims. See Rule 44.1(d) of the Rules of Civil Procedure of Puerto Rico; Fireman's Fund Ins. Co. v. Santoro, 376 F.2d 157, 160 (1st Cir.1967). We do not believe the legal or factual issues that Navieras raised at trial were so frivolous as to warrant our setting aside the district court's denial of fees as an "abuse of discretion." Montanez v. Metropolitan Construction Corp., 87 P.R.R. 35, 36 (1962); see Wolf v. Neckwear Corp., 80 P.R.R. 519, 525 (1958).
 
 The judgment of the district court is
 
 9
 Affirmed.
 
 
 
 *
 Of the Federal Circuit, sitting by designation