**ATLANTIC MUTUAL INSURANCE COMPANY, Plaintiff,**

**v.**

**M/V PRESIDENT TYLER, her engines, boilers, etc., KAM Container Line, Comet International Transport, CF Ocean Service and American President Lines, Ltd., Defendants.**

**No. 88 Civ. 8485(PNL).**

United States District Court, S.D. New York.

April 16, 1990.

Donovan, Maloof, Walsh & Repetto by James W. Carbin, New York City, for plaintiff Atlantic Mut. Ins. Co.

Norman D. Fiedler, New York City, for defendant Comet Intern. Transport.

Crowell, Rouse & Matera by Francis R. Matera, New York City, for defendant KAM Container Line.

Hills, Betts & Nash, New York City, for defendant American President Lines, Ltd.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This maritime action concerns two vacuum steam sterilizers damaged in shipment from New York to Keelung, Japan. Plaintiff Atlantic Mutual Insurance Company ("AMIC"), a subrogated insurer of the shipper, Environmental Tectonics, seeks the recovery of $50,000 from defendants Comet International Transport ("Comet"), American President Lines and its ship the M/V President Tyler ("APL"), as well as KAM Container Line and CF Ocean Service ("KAM"). Defendant Comet cross-claims for indemnity and contribution against defendants APL and KAM. Defendant KAM similarly cross-claims against defendants APL and Comet. Defendant APL in turn cross-claims against defendant KAM.

Defendant APL moves for summary judgment, arguing that the complaint and cross-claims against it are time-barred under the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300 et seq. (1984) (hereinafter "COGSA"). Defendant Comet also moves for summary judgment, arguing that the complaint and cross-claim against it are time-barred.

## BACKGROUND

Environmental Tectonics, Inc., a Pennsylvania Corporation, plaintiff's subrogor, manufactures and sells vacuum steam sterilizers. In the fall of 1986, Environmental Tectonics agreed to sell two boxed vacuum steam sterilizers to Academia Sinica, in Taipei, Taiwan. On November 24, 1986, Environmental Tectonics contacted Comet International Transport ("Comet"), a freight forwarder, and requested Comet's assistance in arranging transport of the sterilizers to Taiwan. Comet hired KAM Container Line to carry the sterilizers to Taiwan, and apparently also arranged for the M/V President Tyler to carry the sterilizers over the sea to Taiwan. Comet never had actual possession of the cargo.

KAM Container Line ("KAM") is a nonvessel operating common carrier (NVOCC), which also operates a warehouse in Kearny, New Jersey. Environmental Tectonics delivered the sterilizers to KAM's warehouse. On or about November 26, 1986, KAM transported the sterilizers, which it had packed with other cargo in a container, to a loading dock in New York, where the container was loaded upon the M/V Presi-

dent Tyler. The M/V President Tyler is owned and operated by APL. APL issued one bill of lading for each sterilizer within the container. The bills of lading named KAM Container Line, U.S.A. as the shipper and KAM Container Line as the consignee. APL's vessel sailed from New York for Taiwan. On November 28, 1986, after the President Tyler had left port, Comet issued a separate bill of lading covering the entire shipment naming Environmental Tectonics as shipper and Academia Sinica as consignee. The shipment was delivered to Taiwanese customs on December 24, 1986. The goods were "unstuffed" at APL's Container Terminal, were sent through customs, and arrived at Academia Sinica on January 8, 1987, where the damage was first noticed. A survey on the extent of the damage was conducted on January 14, 1987, on the premises of Academia Sinica. It is unclear on the papers whether the goods were received by Academia Sinica (or an agent) directly from APL, or from some other carrier in between. A complaint was filed on November 30, 1988.

DISCUSSION

I. *APL's Motion for Summary Judgment*

Defendant APL moves for summary judgment, arguing that the suit is time-barred under the provisions of COGSA. COGSA governs ocean carriage pursuant to bills of lading or other documents of title. 46 U.S.C.App. § 1300. Bills of lading must state, in what is termed a "clause paramount," that they are subject to the express provisions of COGSA. 46 U.S.C. App. § 1312. COGSA establishes the responsibilities, liabilities, rights and immunities of the carrier and the ship. 46 U.S.C. App. § 1305. APL argues that the instant lawsuit is time-barred under 46 U.S.C.App. § 1303(6), which provides: "[T]he carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered."

Plaintiff AMIC responds that no bill of lading exists evidencing a contract of carriage between APL and AMIC, and that COGSA is therefore inapplicable. AMIC argues that its cause of action sounds in the common law of bailments, for which the limitation period is two years.

AMIC's argument is without merit. Assuming *arguendo* that AMIC's subrogor is Environmental Tectonics, Academia Sinica, or another holder of the bill of lading issued by Comet, the terms of that bill of lading, as a contract of carriage, contemplate ocean carriage and the applicability of COGSA, in addition to specifically incorporating the terms of the bill of lading issued by APL.

The Comet bill of lading states that the shipment is to be loaded on the M/V President Tyler in New York. Chang Aff.Ex. G–1. Furthermore, the front of the Comet bill of lading states that Comet has received the goods "for shipment included under a consolidated Ocean Bill of Lading issued and signed by the above mentioned Steamship Company—all terms, conditions and clauses printed or otherwise inserted on Steamship Company's Bill of Lading to apply." Environmental Tectonics, the plaintiff's subrogor, was thus bound to the terms of the vessel's bill of lading, incorporated by reference.[1]

Plaintiff's subrogor was also on notice that COGSA would apply. Clause 5.0 of the Comet bill of lading contains the Clause Paramount, stating that ocean carriage pursuant to the bill of lading shall be governed by the terms of COGSA. AMIC advances no effective arguments that the

1. If M/V President Tyler were to be held liable, it would be on the bill of lading it had issued covering the ocean voyage. This case is unlike the situation in *Insurance Co. of North America v. S/S American Argosy*, 732 F.2d 299 (2d Cir. 1984), where plaintiff sought to hold the vessel liable for damage on transshipment (shipment over land) on a bill of lading issued by an NVOCC which covered both transshipment and ocean carriage. The vessel had issued its own bill of lading covering the ocean carriage. The *American Argosy* court declined to hold the vessel liable on damage which occurred during the transshipment.

contract was obtained by fraud or that it is otherwise invalid.[2]

Even if the bill of lading issued by Comet to the shipper had not given the shipper full notice that the ocean bill of lading (and COGSA) would be applicable to the shipment, the shipper would still be bound to Comet's arrangements of transport. As a freight forwarder, Comet acted as the agent of the shipper in arranging transport. *Reisman v. Medafrica,* 592 F.Supp. 50, 53 (S.D.N.Y.1984) (quoting *United States v. Ventura,* 724 F.2d 305, 310–11 (2d Cir.1983)).

Furthermore, it would be unreasonable to obligate M/V President Tyler and APL beyond the terms of its bill of lading. APL's bill of lading expressly referred to COGSA. No argument has been made showing why plaintiff's subrogor, who had notice that COGSA was applicable to the vessel's carriage of the goods through the bill of lading issued by Comet, should be released from the terms of the ship's bill of lading.[3]

Pursuant to the bills of lading, M/V President Tyler and its owner, APL, are entitled to the benefits of COGSA, including the one-year time limit in which to bring suit. In fact, irrespective of the terms printed in the bill of lading, COGSA expressly limits the carrier's exposure to suit to one year after delivery. 46 U.S.C. App. § 1303(6). Plaintiff's complaint against M/V President Tyler and APL is time-barred.

II. *Comet's motion for summary judgment*

Comet moves for summary judgment, adopting APL's arguments of law that plaintiff AMIC's claims are time-barred. Comet issued a bill of lading on November 28, 1986. That bill of lading named Environmental Tectonics as shipper and Academia Sinica as consignee, noting that ocean transport was being provided by M/V President Tyler.

The bill of lading issued by Comet governs its relationship with Environmental Tectonics, the shipper.[4] Clause 8.2, which appears on the back of Comet's bill of lading, in fine print, is "Time Bar." It states, "[T]he Carrier shall be discharged of all liability unless suit is brought in cases where the liability of the Carrier is determined by the legislation or rules referred to in Clause 5 [COGSA] hereof within twelve months, and in all other cases within the time permitted by the law or provisions pursuant to this Bill of Lading...."

2. AMIC argues that Comet's bills of lading contained statements rendering them void. At the top of the bills of lading, the following statement appeared below the letter head: "The Authorized Agent of American President Lines." Comet concedes that it was not the authorized agent of APL for purposes of issuing its bill of lading. However, the bill of lading is not invalidated.

In order for a bill of lading to be void because of misrepresentations, the misrepresentations must go to the very essence of the contract, the promises made by the party who has issued the bill of lading. *Berisford Metal v. Salvador,* 779 F.2d 841 (2d Cir.1985), *cert. denied,* 476 U.S. 1188, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986). AMIC makes no allegations that the statement implicates the "essence" of Comet's bill of lading, which appears to be that Comet will arrange the transport of the steam sterilizers.

AMIC makes no argument that the false statement damaged its interests. No reliance was alleged, and indeed, as noted above, the misrepresentation appears to be of no effect insofar as the applicability of COGSA to APL is concerned.

3. As a carrier accepting goods for shipment from the general public, a ship should not have to inquire into the authority of the individual who presents the goods. *Puerto Rico Maritime v. Crowley Towing,* 747 F.2d 803, 804 (1st Cir. 1984) ("A *common* carrier can assume that one presenting goods for shipment either owns them or has authority to ship them.") (emphasis in original). Such a vessel should be able, absent special circumstances, to assume that the individual who proffers the goods for shipment can accept a bill of lading under the terms and conditions of shipment stated therein. Absent special circumstances, the risk that the individual presenting the goods for shipment is unauthorized is better borne by the actual owner of the goods than a common carrier.

4. The front of the bill of lading states: "In accepting this Bill of Lading, the Shipper, Consignee, and Owner of the goods agreed to be bound by all of the stipulations, exceptions and conditions....."

Comet claims that the plaintiff is barred from bringing suit by Clause 8.2. Due to an ambiguity in the meaning of the word "the Carrier," however, it is unclear whether Clause 8.2 of the contract covers only the vessel which actually carries the goods, in this case the President Tyler, owned by APL, or Comet, the freight forwarder and issuer of the bill of lading.

First, the back of the bill of lading, including Clause 8.2, appears generally to apply to a vessel, as its clauses govern, among other things, loading procedures, collision rules, and stowage. Second, the front of the bill of lading states, "This Bill of Lading is issued by Comet International Transport solely as Forwarders and Distributers and not as Carriers...." Third, the front of the bill of lading contains the statement, "It is further agreed by the Shipper, Consignee and Owner that the custody and carriage of the goods ... is the responsibility of the Ocean Carrier.... All terms and conditions of shipment are covered by the Bill of Lading of the Ocean Carrier herein mentioned." This language suggests that Clause 8.2, "Time Bar," is either inapplicable to the instant transaction, because the terms of shipment are covered by the Bill of Lading issued by APL, or that Clause 8.2 is for the benefit of the vessel, rather than Comet.

On the other hand, Clause 1.0 on the back of the bill of lading defines Carrier as "the party on whose behalf the Bill of Lading has been issued as indicated on the face thereof." The front of the bill of lading contains the following paragraph:

> "Received from the Shipper ... goods ... for shipment included under a consolidated Ocean Bill of Lading issued and signed by the above mentioned Steamship Company—all terms, conditions and clauses printed or otherwise inserted on Steamship Company's Bill of Lading to apply. In witness whereof the undersigned, signing *on behalf of Comet International Transport* has affirmed ... etc. etc."

It is a possible interpretation, albeit strained, that "Carrier," when used on the back of the bill of lading, refers to Comet, the party on whose behalf the bill of lading has been issued, although the word "Carrier," when used on the front of the bill of lading, clearly refers to APL and its vessel, the President Tyler.

Comet has not made any relevant arguments that it is otherwise covered by the provisions of COGSA. Comet's motion for summary judgment on the grounds that it is entitled to a one-year statute of limitations is denied.[5]

## CONCLUSION

APL's motion for summary judgment on the grounds that the action is barred by the statute of limitations is granted. Comet's motion for summary judgment is denied.

SO ORDERED.

5. This court has jurisdiction over the dispute between AMIC and Comet, as Comet's duties as a freight forwarder relate to commerce by international navigable waters. *Ingersoll Mill. Mach. Co. v. M/V Bodena,* 829 F.2d 293, 302 (2d Cir. 1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988).