**NIPPON FIRE & MARINE INSURANCE CO., LTD.,**
Plaintiff,

v.

**SKYWAY FREIGHT SYSTEMS, INC. and American International Airways, Inc., Defendants.**

No. 98 CIV. 4489(DLC).

United States District Court,
S.D. New York.

April 1, 1999.

David T. Maloof, Maloof & Browne LLP, New York City, for Plaintiff Nippon Fire & Marine Ins. Co., Ltd.

Craig T. Mierzwa, Hoguet Newman & Regal LLP, New York City, for Defendant Skyway Freight Systems.

Paul A. Lange, Law Office of Paul A. Lange, New York City, for Defendant American International Airways.

## OPINION AND ORDER

COTE, District Judge.

The issue presented here is whether a shipper may recover from its common carrier or its common carrier's sub-contractor the amount of its loss beyond that covered by the limitation of liability in its carrier's airbill. The answer is no.

Plaintiff Nippon Fire & Marine Ins. Co., Ltd. ("Nippon") was the insurer of two shipments of laptop computers made by Toshiba America Information Systems, Inc. ("Toshiba"). Defendant Skyway Freight Systems, Inc. ("Skyway"), an air and ground carrier, agreed to ship the laptops and then contracted with defendant American International Airways, Inc. ("AIA"), another air carrier, for their transportation. Most of the first and all of the second shipments were lost and never delivered. Prior to any formal discovery, plaintiff and both defendants now move for summary judgment.

## BACKGROUND

The following facts are undisputed. Toshiba is a manufacturer and distributor of laptop computers and other electronic equipment. Defendant Skyway is a domestic air and ground common carrier that entered into a contract with Toshiba to ship Toshiba's goods. Under this contract, Skyway agreed to carry a shipment of 50 Toshiba laptops on September 8, 1997, and a second shipment of 157 Toshiba laptops on September 9, 1997. Both shipments were shipped on "3S" or three-day air terms, requiring delivery on the third business day following pickup. 3S is Skyway's slowest method of air service. The laptops were to be shipped from Toshiba's facilities in Irvine, California and delivered to Toshiba's consignee, Inacom Corporation, in New Jersey.

The backside of the airbills indicates that the shipments are governed by Skyway's Air Freight and Express Truck Rules and Regulations Tariff No. 1. The tariff states that "Skyway's liability shall, in no event, exceed the declared value of the shipment …" The tariff defines declared value as follows:

Declared Value—Air

A shipment will have *a declared value of 50 cents per pound or $50.00*, whichever is higher, unless a higher value is declared on the Airbill at the time of receipt.

(Emphasis supplied.) The airbills issued by Skyway contain boxes that permit Toshiba to declare the value of the goods. If it had declared a value, the fee for shipping the goods would have been increased at a rate dependent on the value declared. The tariff provides:

An additional charge of 75 cents shall be assessed for each $100.00 (or fraction thereof) by which the value declared on the Airbill, at the time of receipt of the shipment from the shipper, exceeds 50 cents per pound or $50.00, whichever is higher.

Choosing instead to insure the shipment of the laptops through Nippon, Toshiba left the boxes for a declared value blank. Toshiba declared a weight of 600 pounds on the bill of lading for the first shipment and 1,606 pounds on the bill of lading for the second shipment.

Rather than transport the goods itself, Skyway shipped the goods from California to Pennsylvania through AIA. AIA issued two airway bills for the shipments, and "NVD" or no value declared was written in the box entitled "Declared Value for Carriage" on that bill. Each airway bill states on its face that the goods are

subject to the conditions of contract on the reverse hereof, the shipper's attention is drawn to the notice concerning carrier's limitation of liability. *Shipper may increase such limitation of liability by declaring a higher value* for carriage and by paying a supplemental charge subject to conditions of contract on reverse side.

(Emphasis supplied.) The reverse side contains the following limitation of liability provision:

[the] carrier's liability is limited to damages which occur while the shipment is in the custody of carrier or its duly authorized agent and *shall in no event exceed (1) 50¢ per pound, multiplied by the number of pounds (or fraction thereof) of each piece(s) of the shipment which may have been delayed,* lost, damaged, or destroyed (but not less than $50 per shipment), unless a higher value is declared herein and applicable charges are paid thereon, plus the amount of any transportation charges for which the

carrier may be liable, or (2) *the amount of any damages actually sustained, whichever is less;* and that carrier's liability excludes all special and consequential damages for which the shipper has not given the carrier advance written notice on the airbill of the circumstances which will result in the occurrence of such damages, as provided in carrier's Official Freight Tariff Manual.

The AIA tariff manual contains similar limitations.

Skyway delivered both shipments to AIA's facility at the Los Angeles International Airport in California. Both shipments arrived in Philadelphia at 8:40 a.m. on Thursday, September 11, 1997 (the third business day following the September 8, 1997 shipment; the second business day following the September 9, 1997 shipment), and AIA held them for Skyway's pick-up at its Philadelphia airport warehouse. Skyway did not retrieve the shipments in a timely manner, and neither shipment was delivered on time. With respect to the first shipment, 20 of the 50 laptops, with a value of $51,306, were eventually reported missing by Skyway. The remaining laptops were delivered late.[1] With respect to the second shipment of 146 laptop computers, with a value of $337,000, all were eventually reported missing by Skyway. None of these laptops have been recovered.

Nippon, as Toshiba's cargo insurer, reimbursed Toshiba for the loss and filed this action on June 24, 1998, to recover from both Skyway and AIA. The complaint alleges four causes of action. The first cause of action alleges breach of contract and federal common law duties. The second cause of action alleges negligent damage to property. The third cause of action alleges breach of bailment and warehouseman's obligations. The fourth cause of action alleges conversion. Defendant Sky-

---

1. Plaintiff and defendants disagree as to what attempts, if any, Skyway made to pick up the goods and deliver them on time.

way has also filed a cross-claim against defendant AIA seeking indemnification. Although the complaint seeks recovery from both defendants on all four theories, Nippon no longer seeks recovery against AIA on the contract theory.

Plaintiff now moves for summary judgment against both defendants on the ground that they are liable in tort and not entitled to assert the contractual limitation of liability defense. Both Skyway and AIA move for summary judgment seeking to limit their liability.

## DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P.; *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). In deciding whether to grant summary judgment, therefore, this Court must determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the fact in dispute is material based on the substantive law at issue.

### 1. Limitation of Liability

Federal common law governs actions against interstate air carriers for lost or damaged shipments. *See Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922, 928–29 (5th Cir.1997); *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.,* 731 F.2d 1113, 1119 (3d Cir.1984). *See also North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 234 (2d Cir.1978) (pre-deregulation). At common law, a common carrier is liable for damages to goods it transports absent particular exceptional circumstances. *See Shippers National Freight Claim Council, Inc. v. ICC,* 712 F.2d 740, 745 (2d Cir.1983). In addition, "courts refuse[ ] to enforce an agreement between carrier and shipper purporting to relieve the carrier from all liability for loss of property ...." *Id.* at 746.

Nonetheless, a carrier may limit its liability if

> the limitation of liability was the result of a fair, open, just, and reasonable agreement between carrier and shipper, entered into by the shipper for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of risk, and the shipper was given the option of higher recovery upon paying a higher rate.

*Id.* at 746 (internal citations and quotations omitted).

> In determining whether these requirements for enforceability have been met, courts have considered such factors as (1) whether the carrier has given adequate notice of the limitation of its liability to the shipper, (2) the economic stature and commercial sophistication of the parties, [and] (3) the availability of "spot" insurance to cover a shipper's exposure.

*Williams Dental Co., Inc. v. Air Express Int'l,* 824 F.Supp. 435, 441 (S.D.N.Y.1993) (citations omitted). *See also Welliver v. Federal Express Corp.,* 737 F.Supp. 205, 207 (S.D.N.Y.1990); *United States Gold Corp. v. Federal Express Corp.,* 719 F.Supp. 1217, 1224–25 (S.D.N.Y.1989).

The legal basis for permitting a limitation of liability is estoppel. *See Union Pac. R. Co. v. Burke,* 255 U.S. 317, 321, 41 S.Ct. 283, 65 L.Ed. 656 (1921). The policy basis for permitting carriers to limit their liability is that "the carrier is entitled to know the extent of its potential liability for loss of the property and to be compensated in proportion to the risk assumed." *Ruston Gas Turbines, Inc. v. Pan American World Airways,* 757 F.2d 29, 30 (2d Cir. 1985) (internal quotations omitted); *Shippers National,* 712 F.2d at 746. *See also United States Gold,* 719 F.Supp. at 1224 ("The legal validity of an agreed value contract enabled the carrier's rate to be reasonably proportioned to the risk to which it was exposed.").

■ Under federal law, "a carrier's valid federal tariffs which are applicable to the shipment at issue govern not only the nature and extent of its liability, but also the nature and extent of the shipper's right of recovery." *North American Phillips,* 579 F.2d at 233. As a result, the existence of an enforceable limitation of liability clause precludes recovery by plaintiff in tort on negligence, bailment, or conversion theories beyond the amount stated in the contract.[2] *See Owens–Corning Fiberglas Corp. v. U.S. Air,* 853 F.Supp. 656, 665 (E.D.N.Y.1994); *United States Gold,* 719 F.Supp. at 1225. *See also Baloise Ins. Co. v. United Airlines, Inc.,* 723 F.Supp. 195, 198 (S.D.N.Y.1989); *Precious Gem Resources, Inc. v. Federal Express Corp.,* 86 Civ. 7576, 1989 WL 31705, at *3 (S.D.N.Y. Mar.30, 1989); *Nippon Fire & Marine Ins. Co., Ltd. v. Holmes Transp. Inc.,* 616 F.Supp. 610, 611 (S.D.N.Y.1985). Courts have also refused to permit state law claims based on warehouseman's duties, where the storage was only incidental to the interstate shipment. *See Baloise,* 723 F.Supp. at 199; *Royal Ins. v. Amerford Air Cargo,* 654 F.Supp. 679, 681

(S.D.N.Y.1987). *See also United States Gold,* 719 F.Supp. at 1226–27.

### 2. Skyway's Liability

■ Nippon argues that the limitation of liability in the Skyway tariff should not limit its recovery against Skyway for two reasons. First, it argues that Skyway is liable in tort for conversion as a warehouseman since it chose to suspend carriage of the laptops by failing to pick them up. Second, it argues that Skyway is unable to rely on any limitation of liability under a material deviation theory imported from the law of admiralty.

Nippon argues that Skyway was acting as a warehouseman and not as a common carrier when it decided to suspend delivery and held the goods at AIA's warehouse after the three day delivery date, and thus, cannot invoke the limitation on liability. Nonetheless, the law is clear that a failure to deliver and storage incidental to carriage is insufficient to convert Skyway into a warehouseman and thereby create a whole new series of duties for it in addition to those in the contract. *See, e.g., Owens–Corning,* 853 F.Supp. at 666; *Baloise,* 723 F.Supp. at 199. Skyway was engaged to ship the laptops by air, and any storage was temporary and incidental to that primary goal. "In contrast, a warehouseman 'is a person engaged in the business of storing goods for hire.' N.Y. U.C.C. § 7–102(1)(h) (McKinney 1964)." *Royal Ins.,* 654 F.Supp. at 681.

■ As its second argument, Nippon relies on the doctrine of material deviation. Courts in interstate air carrier cases have applied the doctrine in an extremely limited fashion. *See Praxair Inc., v. Mayflower Transit, Inc.,* 919 F.Supp. 650, 655–56 (S.D.N.Y.1996). Specifically,

> the case law establishes that in cases of shipment by air, rail, and truck where the shipper paid an additional charge to

2. To assert a claim for conversion successfully, a plaintiff must plead willful or intentional misconduct of the common carrier. *See, e.g.,*

*Owens–Corning,* 853 F.Supp. at 665–66. Nippon has made no such claims.

ensure specialized safety measures to reduce the risk of damage to its cargo, the carrier's failure to perform those very measures which resulted in damage to the cargo has been found to be a sufficient basis upon which the liability limitation in the shipping agreement may be rescinded.

*Id.* at 656. As described by then Judge Breyer, a carrier must have made a "separate, risk-related promise[ ] (special to the particular shipment at issue)" to allow a shipper to avoid a liability limitation. *Hill Construction Corp. v. American Airlines, Inc.*, 996 F.2d 1315, 1319 (1st Cir.1993). In *Praxair*, the court found that special shipping instructions that required an "air-ride" truck and wrapping the goods in blankets created a triable issue of fact as to whether the material deviation doctrine should be applied. *See Praxair*, 919 F.Supp. at 656.

There is nothing in the record that points to the existence of special circumstances beyond those to which the limitation of liability clause was meant to apply. The only special circumstance suggested by Nippon is the three-day delivery term. Such a standard delivery term—which was the slowest method of air transport offered by Skyway—does not create an exemption from a limitation of liability. *See United States Gold*, 719 F.Supp. at 1225 (overnight delivery). As a result, Nippon's motion for summary judgment against Skyway is denied. Skyway's partial motion for summary judgment is granted, limiting its liability to Nippon to the amount stated in the contract. Since twenty of the fifty laptops in the first shipment were lost, Skyway's liability on that shipment is $120. Since all of the second shipment was lost, Skyway's liability on that shipment is $803.

### 3. AIA's Liability

The parties do not contest that AIA has a valid limitation of liability clause in its airbill issued to Skyway. AIA argues that it may assert this limitation of liability against Nippon. Nippon argues that, regardless of any limitation on Skyway's liability, it may recover under various tort theories the full value of its loss from AIA.[3]

■ As a subcontracting common carrier operating pursuant to its own airbill containing a valid limitation of liability issued to the primary common carrier, AIA is not liable in tort to the original shipper. As a general matter, "[a] common carrier can assume that one presenting goods for shipment either owns them or has authority to ship them." *Puerto Rico Maritime Shipping Auth. v. Crowley Towing and Transportation Co.*, 747 F.2d 803, 804 (1st Cir.1984).

> This must be, since nothing in the duties of a common carrier by the remotest implication can be held to imply the power to sit in judgment on the title of the prospective shipper who has tendered the goods for transportation.

*ICC v. Delaware, L. & W. R. Co.*, 220 U.S. 235, 252, 31 S.Ct. 392, 55 L.Ed. 448 (1911). *See also Chicago, Milwaukee, St. Paul & Pac. R. Co. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 487, 69 S.Ct. 692, 93 L.Ed. 817 (1949). Applying these principles, then District Court Judge Leval wrote in a decision under the Carriage of Goods by Sea Act ("COGSA") that a common carrier

> should be able, absent special circumstances, to assume that the individual who proffers the goods for shipment can accept a bill of lading under the terms and conditions of shipment stated therein. Absent special circumstances, the risk that the individual presenting the

---

**3.** Nippon also argues that AIA has waived any limitation of liability defense by failing to plead it as an affirmative defense. In AIA's answer, however, the fourth affirmative defense reads as follows: "Without admitting any liability, one or more of Plaintiff's claims are precluded by the existence of a contract governing the transport of the alleged goods at issue." The Court regards this as sufficient to meet the requirements of Rule 8(c), Fed. R.Civ.P.

goods for shipment is unauthorized is better borne by the actual owners of the goods than a common carrier. *Atlantic Mutual Ins. Co. v. M/V President Tyler,* 765 F.Supp. 815, 818 n. 3 (S.D.N.Y. 1990). Based on these principles, Judge Leval determined that it would be "unreasonable" to hold a carrier liable "beyond the terms of its bill of lading," even where it had no dealings with the shipper. *Id.* at 818.

■ Application of these common carrier principles to the present facts precludes the plaintiff's tort claims against AIA. As a common carrier, AIA contracted to limit its liability to the amount selected by Skyway. As described above, the very purpose of a limitation of liability clause is to permit a carrier to anticipate the amount of risk it takes on, charge appropriately for bearing that risk, and avoid unforeseeable risk. AIA may not be subject to the very liability it contracted to avoid just because plaintiff and not Skyway was the ultimate owner of the goods. As a common carrier, AIA was forbidden to base its decision to ship upon an inquiry regarding ownership. Allowing plaintiff to hold AIA liable beyond the amount in AIA's contract would increase AIA's exposure on shipments where the owners did not ship the goods directly, even though AIA would not be in a position to know precisely which shipments those would be and would be unable to charge a higher rate commensurate with its increased risk of exposure. Tort liability may therefore not be imposed on AIA.

This holding is not unfair to plaintiff since its original expectations are protected. According to the deal plaintiff struck with Skyway, plaintiff expected to recover from the carrier of the goods, in the event that the goods were not delivered, precisely what it will recover in this action—the

amount provided for in Skyway's airbill, including the limitation of liability contained therein. Precluding any further recovery in tort against AIA is therefore consistent with plaintiff's original expectations; permitting plaintiff to collect against AIA would actually provide the plaintiff with an unexpected windfall.[4]

> One who ships goods at a declared value substantially below their actual worth in order to receive a reduced freight rate is gambling that the goods will not be lost through someone's negligence.

*Perera Co., Inc. v. Varig Brazilian Airlines, Inc.,* 775 F.2d 21, 24 (1985).

Although no court has apparently addressed these issues head on, there is ample support for this holding in the case law. Two district courts in this circuit have reached essentially the same result, without belaboring the rationale for their decisions. In *Owens–Corning Fiberglas Corp. v. U.S. Air,* 853 F.Supp. 656 (E.D.N.Y. 1994), the shipper, Owens–Corning, contracted for shipment of goods with U.S. Express, who in turn contracted with USAir. Both U.S. Express and USAir are common carriers. After the goods were lost, Owens–Corning sued both U.S. Express and USAir in tort and contract. The court concluded that all of Owens–Corning's claims against U.S. Express were precluded by the valid limitation of liability in the U.S. Express airway bill. *See id.* at 667. With respect to USAir, the court found that "Owens–Corning is not entitled to maintain a [contract] cause of action directly against USAir" because Owens–Corning was not a party to the contract between U.S. Express and USAir and not an intended beneficiary of that contract. *Id.* The Court then dismissed the tort claims against USAir because of plaintiff's failure to create a question of material fact

4. Under the present facts, the similarity between the Skyway and AIA airbills means that both shipments were made pursuant to the same limitation on recovery. This Opinion does not address any additional rights that the shipper would have against AIA where the AIA airbill contained a higher damage limitation than that contained in the Skyway airbill. In that case, AIA's damage expectation would be greater than the shipper's possible recovery against Skyway.

that USAir had intentionally converted the goods for its own use or functioned as a bailee. *Id.* In a case with similar facts, the court reached the same result, allowing each common carrier to assert the limitation of liability clause contained in its airbill: the first common carrier's limitation clause being asserted against the shipper, and the second common carrier's clause being asserted against the claim for indemnification. *See Baloise Ins. Co., v. United Airlines, Inc.,* 723 F.Supp. 195, 199 (S.D.N.Y.1989).

Additional support can be found in a series of cases in which a carrier has been permitted to assert a limitation of liability clause against parties other than the shipper with whom it contracted, although none of these cases involve a subcontracting carrier operating according to its own limitation of liability. For example, in *Hampton by Hampton v. Federal Express Corp.,* 917 F.2d 1119, 1120–21 (8th Cir. 1990), a relative of a decedent filed a wrongful death action against Federal Express on the ground that it failed to deliver blood samples sent by decedent's hospital to another hospital. With respect to any contract claim by plaintiff, the Court held that, even assuming that plaintiff is a third party beneficiary of the shipping contract, plaintiff cannot maintain a claim because "the damages suffered by [plaintiff] were not reasonably foreseeable ..." since they were not within the contemplation of the contracting parties. *Id.* at 1124. With respect to any tort claims, the Eighth Circuit applied general tort principles and held that plaintiff could not recover against Federal Express since it "had no knowledge of the contents [of the package], and hence could not reasonably foresee the injury and damages that could be suffered ...." *Id.* at 1126.

A similar result was reached in *Neal v. Republic Airlines, Inc.,* 605 F.Supp. 1145, 1146–47 (N.D.Ill.1985), in which children and heirs sought to recover for improper shipment of the decedent's body on the ground that, since they were not the ship-

pers, their recovery was not barred by the limitation of liability in the airbill. The court held that "neither [the shipper] nor those on whose behalf it acted—parties with an interest in the shipment—may look to anything but the airbill itself as a basis for recovery from [the carrier]." *Id.* at 1149. In justifying this conclusion, the court noted that "there is no indication plaintiffs dealt directly with [the carrier] and that controls the current motion." *Id.* at 1150 n. 4. The court accepted the carrier's argument that "its liability runs to the parties with whom it dealt, not to parties who stand at some remove from the transaction." *Id.* at 1150. *See also Downey v. Federal Express Corp.,* C–92–4956, 1993 WL 463283, at *2 (N.D.Cal. Oct.29, 1993) (consignee bound by terms of airbill as third party beneficiary); *Reece v. Delta Air Lines, Inc.,* 731 F.Supp. 1131, 1135 (D.Me.1990) (wife and heirs of decedent whose body was shipped are bound by airbill entered into by funeral home). Each of these cases limited the liability of a carrier to the deal it struck with the shipper and avoided exposing the carrier to liability beyond what it expected.

None of the arguments made by Nippon compel a different result. Nippon likens this case to a line of cases following *Robert C. Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), a maritime case which held that stevedores, as agents of a carrier, could not seek the protection of the carrier's limitation of liability for their own negligence. *See id.* at 301, 79 S.Ct. 766. *See also Hartford Fire Ins. Co. v. Empresa Ecuatoriana de Aviacion,* 945 F.Supp. 51, 55 (S.D.N.Y.1996) (applying *Herd* to ground handling company of an air carrier). The Eighth Circuit in *Arkwright–Boston Manufacturers Mutual Ins. Co. v. Great Western Airlines, Inc.,* 767 F.2d 425, 428 (8th Cir.1985), applied *Herd* to a situation where the shipper sought to recover against the original carrier's subcontractor. In that case, the shipper sent goods pursuant to four Federal Express airbills

that included limitation of liability clauses. To transport the goods, Federal Express shipped them through a company called Great Western Airlines, which lost the goods in a crash. The agreement between Federal Express and Great Western indicated that Great Western operated "for the sole and exclusive use of [Federal Express]" and did not contain any limitation of liability or explicitly extend the Federal Express limitation to Great Western. *Id.* at 426. The Eighth Circuit found that since Great Western was acting as an agent of Federal Express, *Herd* applied, and Great Western was liable for its own negligence. *See Arkwright–Boston,* 767 F.2d at 426. Although involving a second carrier, *Arkwright–Boston* is distinguishable from the present case. Great Western was not a common carrier, but instead was a specialized carrier whose sole occupation was to transport goods for Federal Express. As a result, Great Western was acting as an agent, as were the stevedores in *Herd.* Furthermore, Great Western neither shipped pursuant to its own airbill nor relied on its own limitation of liability; it only sought protection under the Federal Express airbills. As such, unlike AIA, Great Western arguably could have anticipated liability from unknown plaintiffs, and took no steps to avoid this liability either in the terms of the Federal Express airbills or its contract with Federal Express. As a result, this Court declines to extend the holding of *Arkwright–Boston* to the present facts.

In summary, Nippon may not maintain a cause of action in tort against defendant AIA under a negligence, warehouseman or conversion theory. Summary judgment in favor of AIA against Nippon is therefore appropriate. In addition, since no party contests the enforceability of the AIA airbill against Skyway, partial summary judgment in favor of AIA against Skyway is also appropriate, limiting AIA's liability to the amount provided for in its airbill, which would be Skyway's actual damages.

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendant Skyway's partial motion for summary judgment is granted. Defendant Skyway shall pay plaintiff $923. Defendant AIA's partial motion for summary judgment is granted. Defendant AIA's obligation to pay Skyway is limited to $923.

SO ORDERED.