**CERTAIN UNDERWRITERS AT LLOYD'S LONDON a/s/o MA Laboratories, Inc., Plaintiff,**

v.

**BE LOGISTICS, INC., and Cargo Transportation Services, Inc., Defendants.**

Case No.: 10–20418–CIV.

United States District Court, S.D. Florida.

July 2, 2010.

Mitchell Leslie Shadowitz, Shadowitz Associates, Boca Raton, for Plaintiff.

Michael Simon, Michael Simon, P.A., Miami, Peter Wieler Fudali, Peter W. Fudali, P.A., Fort Lauderdale, for Defendants.

## ORDER GRANTING MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

**THIS CAUSE** comes before the Court upon Defendants', BE Logistics Inc. ("BE Logistics") and Cargo Transportation Services, Inc. ("CTS") Motions to Dismiss, filed April 24, 2010 (DE # 7) and May 24, 2010 (DE # 13), respectively. On May 24, 2010 Plaintiff, Certain Underwriters at Lloyd's of London a/s/o MA Laboratories filed its Response in Opposition (DE # 12) and on June, 1 2010 Defendants replied (DE # 14).

### I. Background

On April 10, 2007, MA Laboratories Inc. ("MA Labs") and BE Logistics entered into an agreement in which BE Logistics agreed to accept and deliver shipments from California to MA Labs' Miami destination. The contract between MA Labs and BE Logistics details the usual procedures followed by BE Logistics, when executing cross-country shipments. As part of its procedures, BE Logistics utilizes teams of two drivers, instructioned not to leave any doors unlocked or equipment unattended. The service agreement includes three options for MA Labs to elect insurance coverage in case of damage to the shipped goods. The three options for coverage are: (1) up to $.50 per pound or $50 maximum per bill of lading included in the shipping price; (2) coverage for express declared value on the bill of lading above $50 and below $100,000 available at an additional $.50 per $100 of value, this option shall not exceed $25.00 of coverage per pound; and (3) coverage for express value over the $100,000 or $25.00 per pound limit requires a separate written statement between the parties. The parties had conducted business under this agreement for about two years.

On February 5, 2009, Plaintiff alleges that a shipment of computer equipment weighing 29,000 lbs. was delivered to BE Logistics for shipment from California to MA Labs' facility in Miami. Plaintiff, Certain Underwriters at Lloyd's of London insured the shipment. BE Logistics issued a bill of lading, which was signed by MA Labs. The bill of lading included language about BE Logistics' limitation of liability policy. In the space for "declared value" $10,000 was declared as the value. At some point during the shipping process, BE Logistics transferred the shipment to its sub-contractor, Defendant, CTS. The cargo was left unattended in an unlocked vehicle and, the shipment was lost. The above-styled action was filed on February 9, 2010 to reclaim the full value of the shipment, $1, 111, 864.90.

### II. Legal Standard

■■■ "For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir.2003). Dismissal of the complaint is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.

1955, 1968–69, 1974, 167 L.Ed.2d 929 (2007). To do so, the plaintiff must include in the complaint more than "a formulaic recitation of the elements of a cause of action." *Id.* at 1965. In analyzing the sufficiency of the complaint, the Court may consider documents "central to or referenced in the complaint." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir.2004). Finally, "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *National Semiconductor Corp. v. Commercial Lovelace Motor Freight,* 560 F.Supp. 908 (D.C.Ill.1983).

### III. Discussion

■ The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, establishes a national liability policy for interstate carriers, and preempts all state and federal common law claims. *Adams Express Co. v. Croninger,* 226 U.S. 491, 505, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *Hughes Aircraft v. North American Van Lines,* 970 F.2d 609, 613 (9th Cir.1992). Furthermore, "the district courts shall have original jurisdiction of an action brought under . . . 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interests and costs." 28 U.S.C. § 1337(a).

■ As a general rule, when a motor carrier loses or injures the property in its care the carrier is liable for "the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1); *see Siren, Inc. v. Estes Express Lines,* 249 F.3d 1268, 1270 (11th Cir.2001). However, 49 U.S.C. § 14706(c)(1)(A) provides an exception to

this general rule, which allows the carrier to limit its liability by written declaration if "that [limited] value would be reasonable under the circumstances surrounding the transportation." There are four steps a carrier must take to effectively limit its liability under the Carmack Amendment: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Bio-Lab, Inc. v. Pony Express Courier Corp.,* 911 F.2d 1580, 1582 (11th Cir.1990) (citing *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987)). Once a valid limitation of liability is in place, federal courts have generally refused to find that limitation invalid because of negligent acts on behalf of the carrier. *Deiro v. American Airlines, Inc.,* 816 F.2d 1360 (9th Cir.1987); *Rocky Ford Moving Vans, Inc. v. United States,* 501 F.2d 1369 (8th Cir.1974).

Plaintiff offers two arguments objecting to BE Logistics' limitation of liability clause: (1) that the bill of lading's terms are ambiguous and therefore inapplicable; and (2) that the Defendants materially deviated from the terms of the service agreement. Plaintiff does not allege that BE Logistics' liability limitation clause is deficient or unreasonable under the Carmack Amendment. Neither of Plaintiff's objections apply to this bill of lading in bar of BE Logistic' reliance on the limitation exception. The Court finds that BE Logistics' liability was limited to $10,000 declared value on the face of the bill of lading.

### A. Ambiguity of Bill of Lading

■■ Plaintiff argues that the bill of lading is ambiguous because it is unclear

what the space on the bill of lading labeled "DECLARED VALUE" refers to, creating an uncertainty as to which level of liability coverage Plaintiff was purchasing. Plaintiff offers no case law to support this position. An experienced shipper cannot avoid a limitation of liability based on a misunderstanding regarding the bill of lading. *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1421 (7th Cir.1987). When interpreting the bill of lading, like any other contract, "[t]he court cannot make a new contract for the parties where they themselves have employed express and unambiguous words." *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1454 (11th Cir.1989).

■ At the time the bill of lading was executed, MA Labs and BE Logistics had been shipping cargo with BE Logistics continuously for two years. Though Plaintiffs allege that the "DECLARED VALUE" may be interpreted as referring to the declared value per loose piece, this interpretation is inconsistent with the terms of the contract because such an interpretation would produce a total liability coverage of $290,000, and a separate written agreement is required by the contract for all shipments valued over $100,000. Alternately, Plaintiff contends that a possible interpretation of the liability limitation clause would produce coverage of $14,500, because that value corresponds to $.50 per pound liability coverage. However, the terms of the contract and the bill of lading are clear that the $.50 per pound level of coverage is cut off at $50 of total coverage. MA Labs filled out the bill of lading, and signed directly under the release of liability clause which provides that "all applicable fees have been paid." If MA Labs had a question about which level of liability coverage they were purchasing, the time to raise such a question was before signing the bill of lading. Therefore, the Court rejects Plaintiff's argument of ambiguity in the terms of the bill of lading.

## B. Material Deviation Doctrine

■ The "material deviation" doctrine originates in admiralty law, and has previously been applied to over land and airborne shipping in certain circumstances. *Praxair Inc. v. Mayflower Transit. Inc.*, 919 F.Supp. 650, 654 (S.D.N.Y.1996).[1] The court in *Praxair*, applied the doctrine to overland shipping in a claim governed by the Carmack Amendment, and explained the doctrine as follows:

> [I]n cases of shipment by air, rail, and truck where the shipper paid an additional charge to ensure specialized safety measures to reduce the risk of damage to its cargo, the carrier's failure to perform those very measures which resulted in damage to the cargo has been found to be a sufficient basis upon which the liability limitation provision in the shipping agreement may be rescinded.

*Praxair*, 919 F.Supp. at 656; *see also Hill Constr. Corp. v. Am. Airlines, Inc.*, 996 F.2d 1315, 1319 (1st Cir.1993) (holding the doctrine is limited to contracts where a "separate, risk-related promise (special to the particular shipment at issue)" exists). Cases that apply the "material deviation"

---

1. In the admiralty context, a "material deviation" from the contract of carriage "changes the character of a voyage so essentially" that the liability limitation provision ceases to protect the carrier from damages stemming from that deviation. *The Sarnia*, 278 F. 459, 463, 466 (2d Cir.1921) (holding that a carrier loses the benefit of a liability limitation clause when, deviating from the express provisions of the contract, cargo is stowed on deck and the cargo is subsequently damaged by such deviation); *Pioneer Import Corp. v. the Lafcomo*, 159 F.2d 654, 655 (2d Cir.1947) (denying the carrier the benefit of its liability limitation clause because the carrier failed to cover the shipment with tarpaulins, as expressly provided in the contract, and the shipment was subsequently ruined by inundating sea water).

doctrine to overland and airborne shipments involve a "separate, risk-related promise" in addition to the general terms of the shipping contract. *Compare Nipponkoa Ins. Co. v. Watkins Motor Lines, Inc.,* 431 F.Supp.2d 411, 419 (S.D.N.Y. 2006) (applying the doctrine where specific security guidelines were negotiated and agreed to by parties and the carriers' breach of those guidelines resulted in the loss of the shipment), *with Nippon Fire & Marine Ins. Co. Ltd. v. Skyway Freight Systems, Inc.,* 45 F.Supp.2d 288 (S.D.N.Y. 1999) (upholding Skyway's liability limiting clause because a three day delivery term is not a "separate, risk-related promise"), *and Rocky Ford,* 501 F.2d at 1372 n. 5 (noting the absence of any evidence the shipper had paid an additional charge for the privilege of approving the warehouse used to store its cargo).

■ In *Mingtai Fire and Marine Insurance, Co., Ltd., et al. v. Expeditors International of Washington, Inc., et al.,* No. 08–21801–CIVJordan (S.D.Fla. August 18, 2009), Judge Jordan did not apply the "material deviation" doctrine because he found there was no "separate, risk related promise." Judge Jordan noted that plaintiffs did not furnish any evidence that "special, shipment-specific, terms had ever been negotiated or discussed." *Id.* at *5. Moreover, he held that literature describing the defendant's security procedures did not prove that any "special precautions particular to the transport of laptop computers or this shipment was ever discussed, contemplated, or bargained for," but simply promoted the company's general security protocols to the plaintiff. *Id.* at *6.

■ In the instant case, the "material deviation" doctrine does not apply because there is no evidence of a "separate, risk-related promise." Plaintiff suggests that the third paragraph of the service agreement dealing with security measures is such a promise. However, a close examination of that language reveals the statements simply outline a description of BE Logistics' general security measures. Phrases that refer to BE Logistics' broad services like "BE Logistics ground service utilizes," and "all cross-country moves," lead to the conclusion that these security measures were not negotiated specifically for the Plaintiff's deliveries, but are BE Logistics' general security protocols. Moreover, Plaintiff does not point to any evidence that special consideration was paid, above BE Logistics' usual shipping rates, for added security measures. As in *Rocky Ford, Mingtai,* and *Nippon Fire,* BE Logistics' paragraph detailing the general security measures does not rise to the level of a "separate, risk related promise." The security measures are not specific to the shipment in question and there is no evidence of negotiation or additional consideration paid specifically for the implementation of a "separate, risk-related promise." Therefore, even if the material deviation doctrine applied to this case, Plaintiff has not pled sufficient facts to warrant a circumvention of BE Logistics' valid limitation of liability.

## IV. Conclusion

In sum, Plaintiff has failed to adequately plead a sufficient claim for damages under the Carmack Amendment to the Interstate Commerce Act. The Court finds to a degree of legal certainty that the Plaintiff's claims are limited to the $10,000, "DECLARED VALUE" on the bill of lading. The Court, therefore, lacks subject matter jurisdiction because the amount in controversy does not surpass the $10,000 Carmack Amendment threshold. Accordingly, after a careful review of the record and the court being otherwise fully advised it is.

**ORDERED, ADJUDGED, and DECREED** that

1. BE Logistic's Motion to Dismiss (**DE # 7**) be, and the same is hereby, **GRANTED;**

2. CTS' Motion to Dismiss (**DE # 13**) be, and the same is hereby, **GRANTED;** and

3. Plaintiff's Complaint, and the same, is hereby **DISMISSED** with prejudice.